Camp v. Simon et al.

E. M. CAMP, Respondent, v. FRED SIMON, JAS. F.
WOODMAN, JOHN A. GROESBECK, C. E. WANT-
LAND, W. H. ROWE, A. L. BURNHAM, SAMUEL
McINTYRE, M. P. MASON, JNO. M. THURSTON,
THOMAS L. KIMBALL, THOMAS SWOBE, R. C.
CHAMBERS, JOSEPH M. STOUTT, P. L. WIL-
LIAM, A. E. DeRICQLES, and JOHN H. WHITE,
Appellants.

CONTRACT — INTERPRETATION — FINDINGS — SUPPORTING JUDGMENT —
JUDGMENT AFFIRMED — EVIDENCE—HEARSAY — WHEN ADMISSION OF
IMMATERIAL—DEFENDANTS ALL PRINCIPALS IN CONTRACT SUED ON—
INSOLVENCY OF SOME NO DEFENSE FOR OTHERS—PLAINTIFF SUING AS
ASSIGNEE OF NEW YORK EXECUTORS—RIGHT OF ACTION—NOT DEPEN-
DENT ON UTAH ADMINISTRATION.

1. CONTRACT: INTERPRETATION. The term "ninety days from the ex-
piration of said five years," expressed in a contract, and referring
solely to a time limit within which the obligees therein could exercise
a certain option therein given them, can be given no other effect than
to fix the period of time within which, after the expiration of five
years, the obligees should exercise the right and option specified; and
this although the contract may by other terms provide a similar
option upon default by the obligors.

2. FINDINGS: SUPPORTING JUDGMENT: JUDGMENT AFFIRMED. When find-
ings are justified by the evidence, and in connection with facts ad-
mitted by the pleadings, support the judgment, the judgment must
be affirmed unless some reversible error was committed in the course
of the trial.

3. EVIDENCE: HEARSAY: WHEN ADMISSION OF IMMATERIAL. When cer-
tain facts are admitted by the pleadings, the admission of certain
letters in evidence as additional proof of such facts, is not reversible
error, although such letters may be hearsay and incompetent.

Camp v. Simon et al.

4. DEFENDANTS ALL PRINCIPALS IN CONTRACT SUED ON: INSOLVENCY OF
SOME NO DEFENSE FOR OTHERS. Defendants all being principals in
the contract sued on, the insolvency of some of them can not affect
the plaintiff's rights regarding the others, and no delay in the en-
forcement of the contract, short of the statutory period of limitation
can defeat his claim.

5. PLAINTIFF SUING AS ASSIGNEE OF NEW YORK EXECUTORS: RIGHT OF
ACTION: NOT DEPENDENT ON UTAH ADMINISTRATION. Where plaintiff
sues as the assignee of the executors of a certain estate administered
in New York and it appears that under the law of New York the ex-
ecutors had authority to transfer the contract sued on, plaintiff had
the right to sue and maintain the suit as such assignee, without re-
gard to any administration of the estate in this State.

Decided December 18, 1900.

Appeal from the Third District Court, Salt Lake County.—
*Hon. A. N. Cherry,* Judge.

Action based upon a certain written contract. From a
judgment for plaintiff defendants appealed.

AFFIRMED.

*Messrs. Brown & Henderson* and *W. C. Hall, Esq.,* for
appellants.

This contract is one that requires the strictest construc-
tion against the obligees and the most favorable to the obligors.
It is a contract of sureties. Not any benefit whatever is al-
leged to have accrued to any of these twelve signers, for signing
it. It was purely voluntary on their part. No consideration
goes to any one of them, or to any institution to which they
are alleged to be members or shown to be members. We do not
urge this as ground why the bond is not valid, but we do urge
it as a reason why a strict construction should prevail against

Camp v. Simon et al.

the right to recover. The obligees in the first place subscribed to the stock for the corporation, they got the stock, they are the ones who received the entire benefit of the transaction. Whether the stock was worth all which was paid, or more or less, is of no interest or moment to any of the subscribers. Such contracts as these always require the strictest construction, by universal authority.

"No consideration moved to these sureties; they are not bound beyond the exact terms of their guaranty. They would be liable solely because of their promise and are under no obligation to pay, outside of the precise terms of the contract, and beyond the exact words of their agreement, they are neither liable by implication or by construction. Their liability is *strictissimi juris.*" Coughran v. Bigelow, 9 Utah, 260-266, and cases cited.

We think that manifest error was made in this case in the admission of evidence and in the rejection of evidence, particularly in admissions of letters. There were three classes of letters offered in evidence: first, letters of some of these defendants; second, letters of co-signers, not parties to the suit; third, letters of Mason. To each and all of these letters objection was made that they were hearsay. This would apply alike to all. The theory seems to have been that these parties being engaged in a joint enterprise and making a joint contract, the declaration or statement of any one of them was admissible against all. This is contrary to the first rules of evidence of admissions arising from the relation of joint owners, joint directors and all classes of persons who engage in any joint enterprise. Even in criminal actions, confessions or admissions must be limited to the period of conspiracy or joint undertaking.

Spies case, 6 American Crim. Reports, 570.

Camp v. Simon et al.

*S. McDowall, Esq.,* and *Messrs. Richards & Varian* for respondent.

It is asserted that the conversations between McDowall and Stoutt were erroneously admitted. The general objection that they were hearsay and immaterial was interposed. Attention was not called at any time to any part of the answers as objectionable. The conversations were all in relation to this bond and the payment of it, principal and interest. Stoutt was an obligor on the bond. His bank was the place of payment. The evidence shows, that the payment of interest (and principal) were to be made at Stoutt's bank; that they had been made there, and that Stoutt was attending to the collection of money for this purpose from his co-signers.

This evidence did not in any way change the result which necessarily was controlled by the construction of the covenant in the bond, hereinbefore referred to. It was, however, strictly competent and admissible, not only against Stoutt himself, but against his co-signers, the other defendants. The obligation of the bond is joint as well as several.

No fraud or collusion appeared, and the *joint* interest was shown by the bond, and the *answer,* and was subsisting at the time. This being so, the admissions of one were binding upon all. 1 Am. and Eng. Enc. Law (2 Ed.), 703, and notes; Forsyth v. Doolittle, 120 U. S. 74; Walling v. Rosevelt, 16 N. J. Law 41; Hurst v. Robinson, 13 Mo. 82, 53 Am. Dec. 134; approving Armstrong v. Farrar, 8 Mo. 627; Lowe v. Boteler et al., 4 Harris & McHenry, 346, 1 Am. Dec. 410; Bound v. Lathrop, 4 Conn. 336, 10 Am. Dec. 147; McMillan v. McDill, 110 Ill. 51; Martin, Admr., v. Root, 17 Mass. 227; Bacon v. Green, 36 Fla. 325, 18 So. 870; 2 Wharton Ev., secs. 1193-1197; 1 Jones Ev., sec. 253; 1 Greenleaf Ev., sec. 174; Barrick v. Austin, 21 Barb. 241, p. 294-5; Crosse v. Bedingfield,

12 Sim. 35; Southern Insurance Co. v. Wilkins, 53 Ga. 535; Parker v. State, 8 Blackf. (Ind.) 292; Camp v. Dill, 27 Ala. 553.

There is no *time* for making an election upon a default in the interest specified in the bond. How does this covenant differ from the ordinary one contained in mortgages?

The Supreme Court of Nebraska said:

"A provision in a mortgage that 'if the annual interest on any of said notes remains unpaid for thirty days after maturity, this entire debt, all of said described notes principal and interest, shall become immediately due and payable, and this mortgage may then be foreclosed,' is permissive merely, and the entire debt will not become due unless the mortgagees elect so to declare by instituting an action to foreclose." Lowenstein v. Phelan, 17 Neb. 429, 22 N. W. Rep. 561; Campbell v. West, 86 Calif. 201; Glass v. Glass, 114 Calif. 566, 55 Am. St. Rep. 90.

"*Immediately due,* means immediately upon or after the holders election; and he is not bound to elect immediately after death." 2 Jones on Mortgages, sec. 1182; Randolph v. Middleton, 20 N. J. Eq. 543; Wheeler & Wilson M. Co. v. Howard, 28 Fed. Rep. 741; Wiltsue Mortg. Foreclosure, sec. 44.

This action is brought by the assignee of the bond, and the uncontradicted evidence in the case is, that under the laws of New York, and at common law, executors had the power to sell, transfer and assign personal property and choses in action of the estate without an order of court. Peterson v. Chemical Bank, 24 How. Pr. (N. Y.) 267; Shultz v. Pulver, 11 Wend. (N. Y.) 363; In the matter of Butler, 38 N. Y. 397; Blood v. Kane, 130 N. Y. 514; Makepeace v. Moore (a note), 10 Ill. 474; Burt v. Ricker (mortg.), 6 Allen (Mass.) 77; Clark v. Blackington (note and mort.), 110 Mass. 369, pp. 374, 375; 7 Am. and Eng. Ency. of Law, pp. 288-289, and notes; 1

Estee's Pleadings, sec. 357; 1 Woerner's Law of Administration, sec. 162; Campbell v. Brown, 64 Iowa 425, 20 N. W. Rep. 745.

"An executor may, in his individual name, assign securities belonging to the estate." Mahaney v. Walsh, 44 N. Y. S. 969; Jelke v. Goldsmith, 52 Ohio St. 499.

"No order of court is required to authorize assignment or sale of choses in action or personal property by executors in New York or at common law." Sherman v. Willett, 42 N. Y. 146; Mahaney v. Walsh, 44 N. Y. S. 969; 1 Woerner on Admr., secs. 175, 331.

"In the absence of evidence to the contrary, an administrator in another State will be presumed to have authority by virtue of his office to sell a note and mortgage belonging to the estate." Clark v. Blackington, 110 Mass. 369.

"It will be presumed that probate court proceeded regularly in appointment of executor." Ubell v. Maltese, 2 Utah 430.

We submit that there was sufficient proof, uncontradicted, of appointment of executors of estate of T. H. Camp, deceased. Mattison v. Childs, 5 Colo. 78; 2 Greenleaf on Evid., 339, 340; Wharton on Ex., secs. 66-811; 3 Redfield on Wills, star p. 195. Mills v. Henderson, 77 Tex. 89.

"An adjudication in probate court has effect of judgment and can not be collaterally attacked." West v. Utah N. B., 8 Utah 374; Rogers v. Thompson, 9 Utah 46; Amy v. Amy, 12 Utah 279.

While admitting that a foreign executor, in the absence of a statute, has no right to sue in his *representative* capacity, and that there is no law in Utah, California, Washington and New York authorizing it, we contend that the right of an assignee to sue, although a foreign executor could not, is firmly settled, upon principle, and by an almost unbroken line of authority.

Low v. Burrows, 12 Calif. 181; Peterson v. Chemical Bank, 32 N. Y. 21; Middlebrook v. Mer. Bank, 24 How. Pr., 267; Harper v. Butler, 2 Peters U. S. 239; Story Conflict of Laws, sec. 258; 1 Estee's Pleadings, sec. 141, p. 72; Monson v. Ex. Natl. Bank (Wash.), 52 Pac. Rep. 1011; Waldo v. Milroy (Wash.), 52 Pac. Rep. 1012; McCully v. Cooper, 114 Cala. 258, 46 Pac. 82; Solinsky v. Fourth Nat'l Bank, 82 Tex. 244, 17 S. W. Rep. 1050; Smith v. Tiffany, 16 How. (N. Y.) 552. Campbell v. Brown, 64 Ia. 425; McKay v. St. Mary's Church, 23 Atl. Rep. 108; Sanford v. McCreedy, 28 Wis. 103; 1 Woerner Adm'n, sec. 162; 3 Wait's Actions and Defenses, sec. 2, p. 237.

BASKIN, J.—This action is based upon a written contract entered into on the eighth day of March, 1892, by and between T. H. Camp and George W. Wiggins, parties of the first part, and the defendants, who are the appellants in this action. The contract is set out in full in the complaint, and is as follows, to-wit:

"Whereas, the undersigned are interested in the Union Stock Yards Company, of Salt Lake county, Utah, and are desirous of assisting the said company in securing money with which to continue improvements now in progress; and,

"Whereas, T. H. Camp, and G. W. Wiggins, both of Watertown, Jefferson county, New York, have agreed to subscribe and pay for one hundred and fifty shares of the capital stock of said Union Stock Yards Company:

"Now, therefore, in consideration of said subscription and payment by said Camp and Wiggins into the treasury of said company of the sum of fifteen thousand dollars, the par value of said stock, and in further consideration of the sum of one dollar to each of us in hand paid, we guarantee and covenant that we will pay or cause to be paid to the said Camp and

Wiggins, a dividend of eight per cent per annum on the par value of said stock, for the term of five years from the twenty-first day of March, 1892, payable at the Jefferson County National Bank, of Watertown, New York; and we covenant and guarantee to pay or cause to be paid the said eight per cent dividend promptly each year as the same becomes due, for a period of five years.

"It is further covenanted and agreed by the undersigned that within ninety days of the expiration of the said five years, said T. H. Camp and G. H. Wiggins, shall have the right and option to retain said stock at par value, without being required to make any further or other payment therefor than the original amount of their subscription and payment; or, they, the said T. H. Camp, and G. W. Wiggins may at any time within the said ninety days from the expiration of the said five years, tender the said stock to the Utah National Bank of Salt Lake City, Utah (transmission by mail will be sufficient tender), duly assigned in blank for the benefit of the obligors upon this undertaking, and thereupon the undersigned covenant and agree to pay the said Camp and Wiggins the full sum of fifteen thousand dollars, with accrued interest from the time when the fifth annual dividend of said eight per cent was due and paid.

"And the undersigned further covenant and agree if said interest is not paid promptly at the time and place hereinbefore mentioned, that the entire principal and interest shall then and there become due, and upon tender of the stock to the said Utah National Bank, in the manner and for the purposes aforesaid, payment in full may be demanded and collected from the undersigned on this bond, for which payment of the principal sum of fifteen thousand dollars, and the interest thereon annually at the rate of eight per cent per annum, which interest for the said term of five years, is to be paid or payment thereof secured as dividends on the stock aforesaid, well and truly to be made, we,

the undersigned, hereby bind ourselves, our heirs, administrators and assigns, jointly and severally firmly by these presents."

The following allegations of the complaint are not denied by the answer, and are therefore admitted, viz.: That the said defendants on the eighth day of March, 1892, executed and delivered to T. H. Camp and George W. Wiggins, said obligation in writing; that in pursuance thereof, the said Camp and Wiggins subscribed for the stock therein mentioned, and paid into the treasury of the Union Stock Yards Company, for said stock, the sum of $15,000; that no dividends have been paid or declared by the Union Stock Yards Company, or at all; that after the first dividend was due on said stock pursuant to the terms of the written obligation hereinbefore set out, and beginning on, to-wit, April 3, 1893, and at divers times thereafter, said defendants paid in all, as interest on said sum of $15,000 secured by the obligation hereinbefore set out, the sum of thirty-two hundred dollars, interest up to and including November 21, 1894.

That an installment of interest on said obligation amounting to the sum of $1,200 became due and payable on March 21, 1895, and that said defendants paid on account thereof only $800, and as to $400 thereof made default, and neglected and failed to pay the same or any part thereof; and that on March 21, 1896, another installment of interest on said obligation amounting to $1,200 became due and payable, but said defendants made default and neglected and failed to pay the same or any part thereof; that on the ninth day of October, 1896, said defendants not having paid the said two last mentioned installments of interest, the said T. H. Camp (to whom, it is alleged in the complaint, the said Wiggins, on the twenty-fifth day of March, 1892, transferred his interest in said contract and stock, but which allegation is denied in the answer) by his agent and attorney, tendered said stock, indorsed in blank for the benefit

of the defendants, to the Utah National Bank in Salt Lake City, Utah, and demanded of said bank payment of said $15,000, with the interest due thereon, but said bank refused to pay the same, or any part thereof, and that thereupon the said T. H. Camp by his said agent and attorney, in writing notified each of the defendants of said tender and refusal an'' demanded of them payment of said $15,000, and the accrued interest thereon, but that said defendants did not pay the same or any part thereof and have ever since failed to make such payment.

In avoidance of these admitted facts, the defendants in their answer allege that said T. H. Camp instead of tendering said stock while the defendants were in default accepted and retained said stock as his own: "That on the twenty-first day of March, 1895, the interest on said obligation became and fell due, to-wit: the sum of $1,200. That the said defendant did not pay the same, but did pay thereupon the sum of $800, and made default in payment of the remaining $400. That no part of said $400, or interest thereon to date, was then or at any time since has been paid. That thereby by the terms of said bond the principal sum of said bond ($15,000) became and was due, and remained thereafter due for the space of ninety days. That by the terms of said bond the holders thereof were required to elect within said ninety days whether to retain the stock or rely upon the said liability upon the bond. That at the expiration of the said ninety days the holders of the bond elected to retain the stock and not to rely upon the personal liability of the signers of said bond. That the said holders of said stock did retain the said stock at that time and afterwards until the ninth day of October, and ever since 1896, and never at any time during that period, between the twenty-first day of March, 1895, and the ninth day

23 Utah—5

of October, 1896, indicated in any form to the defendants that the then holders of the bond intended to rely upon the personal security at all, but by the retaining of said stock elected to waive any suit upon said bond."

There is no evidence that the said T. H. Camp, in expressed terms, elected to retain the stock and release the defendants from liability, but the claim that he did so is based solely on the terms of the contract and the admitted facts that he retained said stock for more than ninety days from the first default of the defendants, which occurred on March 21, 1895, and did not tender the same to the Utah National Bank, or indicate any intention of holding defendants liable, on account of default, for the principal sum mentioned in said contract, until October 9, 1896.

The court below held that the contract did not warrant defendants' contention that such retention of the stock and the failure to tender the same to the Utah National Bank in ninety days from the default of the defendants, was, under the provisions of the contract, an election by the said T. H. Camp to retain the stock and release the defendants from liability.

The following statements in the appellants' brief indicate the important points presented by the assignments of error and principally relied upon by defendants:

"The principal points relied upon by the appellants are that the court erred in holding that the grantee could make a tender of the stock at any time to the bank, and in not holding that the grantee had elected to treat the stock as his by not tendering it within ninety days after default.

"In admitting in evidence the letters of the co-signers to the bond, and the letters of Mason.

"In ruling that defendants could not show by way of defense, that some of the signers had become insolvent and permitting the plaintiff to sue without administration of the estate

of T. H. Camp being had in the State of Utah."

As the facts relating to the first point, mentioned in said brief, are not disputed, the decision of the point depends solely upon the true interpretation of the contract. Its terms are plain and unambiguous.

Defendants' counsel claim that by the terms of the contract the obligees were required, within ninety days from the date of the first failure to pay the interest, to make the election mentioned in the answer. No such terms are expressed in said contract, or implied from its expressed terms.

The term, "ninety days from the expiration of said five years," expressed in the contract, evidently, was not intended to have, and under no tenable interpretation could be given any other effect than to fix the period of time within which, after the expiration of five years, the obligees should exercise the right and option specified in the contract, of either retaining the stock or tendering it to the Utah National Bank.

The terms "ninety days" do not occur in the contract except in connection with the expression "from the expiration of said five years." The contract provides that if the interest is not paid promptly both the principal and interest shall then become due, and immediately following this provision the following language occurs: "And upon tender of the stock to the Utah National Bank, in the manner and for the purpose aforesaid, payment in full may be demanded and collected."

Counsel for the appellants claim that this clause of the contract requires the obligees to tender the stock to the Utah National Bank within ninety days after default.

The language used is not susceptible of such a construction. While the purposes of both of the tenders mentioned in the contract are evidently the same, and each was required to be made in the same manner, yet as the right to make the first tender mentioned depends solely upon the lapse of time and can

not be made until after the expiration of five years, and the right to make the second tender depended upon entirely different events, and accrued immediately upon default in the payment of the interest, the terms "in the manner and for the purpose aforesaid" have no relation whatever to the period of ninety days named in the contract, and did not limit the time within which the stock might be tendered to the Utah National Bank, to ninety days after default.

The plaintiff claims to be the legal owner and holder of said contract and stock, by virtue of certain assignments thereof.

It is alleged in the complaint that on the twenty-third day of March, the said George W. Wiggins, for the consideration of $7,500, to him in hand paid by the said T. H. Camp, assigned to said Camp all his right, title and interest in and to said contract and stock; that the said T. H. Camp died in the county of Jefferson, State of New York, on the seventh day of February, 1897, leaving a last will and testament and an estate in said county, and that at the time of his death he was a resident thereof; that on the tenth day of February, 1897, Walter H. Camp, George V. S. Camp and Frederick S. Camp were appointed executors of the last will and testament of the decedent, T. H. Camp, by the surrogate of said Jefferson county, and thereupon said appointees qualified as such executors; that on the twenty-first day of June, 1897, said executors for a valuable consideration paid by plaintiff, did, by writing, assign, transfer and set over to said plaintiff said contract and all their right, and the rights of the said decedent and of his estate thereunder, together with all sums of money due or to become due thereon; that by the laws of the State of New York said contract, and all the rights of said decedent thereunder passed to said executors to be used and disposed of by them according to their own discretion, without the order of any court in the premises.

The foregoing allegations are denied by the answer, but

the trial court, in its findings, found the facts as alleged in the complaint.

The findings are justified by the evidence, and in connection with the facts admitted by the pleadings, support the judgment rendered in favor of plaintiff for the sum mentioned in said contract, with interest thereon, and should therefore be affirmed, unless some reversible error was committed in the course of the trial.

The second principal point relied upon by appellants is, that the court erred in admitting in evidence, over appellants objection, the letters of the co-signers of the contract.    These letters had no bearing on any of the issues formed by the pleadings, but were admissions by the co-signers, who wrote the letters, of the liability of the defendants, to the obligees, of the contract, and the objection urged to the admission of these letters in evidence was that the admission of liability by one of the co-signers of said contract could not bind the other signers.

As the liability of the defendants to the obligees of said contract, as before shown, is admitted by the pleadings, the plaintiff was not required to introduce any testimony on that point.    So that the introduction of these letters, even though it were admitted that they were, as claimed by the appellants, hearsay and incompetent, as they related to facts admitted by the pleadings, their admission is not reversible error.    See 2 Ency. of Pl. and Pr. (2 Ed.), 553, n. 3, and cases cited.

The third principal point relied upon by appellants is that the court erred in ruling that the defendants could not show, by way of defense, that some of the signers had become insolvent.

The defendants, for a good and sufficient consideration moving to them, as principals, not only guaranteed the annual payments mentioned in said contract, but as principals covenanted and agreed to pay to the said Camp and Wiggins, upon

the happening of certain events, the $15,000 mentioned in the contract.

As the defendants are principals in said contract, the insolvency of some of them can not affect the plaintiff's rights regarding the others, and no delay in the enforcement of the contract, short of the statutory period of limitations, can defeat his claim.

The last principal point, relied upon in the appellants' brief is that the court erred in permitting the plaintiff to sue without administration of the estate of the said T. H. Camp, deceased, being had in the State of Utah.

As the executors, under the laws of New York, had authority to transfer said contract and stock by assignment, and did so transfer the same, the plaintiff had the right to sue and maintain the suit as such assignee, without regard to any administration of said estate.

It is not necessary to pass upon the remaining assignments of error. No reversible error is shown by the record. It is therefore ordered that the judgment of the lower court be affirmed, and that the appellants pay the costs.

*Bartch, C. J.,* and *McCarty,* District Judge, concur.